199      147
24 SC  335

## Girton *v.* Lehigh Valley Railroad Company, Appellant.

*Negligence — Railroads—Passengers — Alighting from train— Crossing tracks at station.*

In an action by a passenger against a railroad company to recover damages for personal injuries, a verdict and judgment for the plaintiff will be sustained where the evidence tends to show that the plaintiff with a young child alighted with the help of the brakeman on the side of a two-track railroad directly opposite the station and platform of her destination; that it was necessary for plaintiff to reach her home to cross the two tracks; that the space between the platform and the point where plaintiff alighted had been filled and leveled up by the railroad company to enable its passengers to cross over to and from the depot; that this was not only the usual and customary way, but the only way provided by the company; that plaintiff remained standing with her child by her side after she had alighted from the train, until it had pulled by her perhaps a car's length, when she looked up and down the track to see if there was any other train coming; that there was no train in sight, except the one from which she had alighted, and none to be heard; that she then started to cross and passed on until she reached the space between the two tracks, where she stopped and again looked up and down the tracks to see if there was any train, but there was none in sight; that she glanced around at her child and saw he was by her side; that she then started across the last track, and had gotten across, and was stepping up with one foot raised to the platform, when she was struck by an express train which suddenly came around a curve a few hundred feet away, after plaintiff had started across the last track, some minutes late, running at a very rapid and unusual rate of speed, and without blowing a whistle or ringing a bell.

POTTER, J., dissents.

Argued Feb. 25, 1901.    Appeal, No. 233, Jan. T., 1900, by

defendant, from judgment of C. P. Wyoming Co., Oct. T., 1899, No. 131, on verdict for plaintiff in case of Lorenzo E. Girton and Maud Girton v. The Lehigh Valley Railroad Company. Before McCollum, C. J., Mitchell, Brown, Mestrezat and Potter, JJ.   Affirmed.

Trespass for personal injuries.   Before Dunham, P. J.

At the trial it appeared that on July 24, 1899, Maud R. Girton, the wife of L. E. Girton, was injured while crossing the tracks of the defendant company at Ransom station.   The circumstances of the accident are stated at length in the opinion of the Supreme Court.   The court refused to give binding instructions for defendant.

Verdict and judgment for L. E. Girton for $2,129, and for Maud R. Girton, $2,001.98.   Defendant appealed.

*Error assigned* was in refusing to give binding instructions for defendant.

*F. W. Wheaton* and *Charles E. Terry*, for appellant.—Maud R. Girton, with full knowledge of a safe way of egress from defendant's premises, voluntarily chose a way of known danger, without which the injury could not have happened: Dell v. Phillips Glass Co., 169 Pa. 554; Hill v. Twp. of Tionesta, 146 Pa. 11; Haven v. Pittsburg & Allegheny Bridge Co., 151 Pa. 620; Mulherrin v. Del., Lack. & Western R. R. Co., 81 Pa. 366; Penna. R. R. Co. v. Zebe, 37 Pa. 423; Flanagan v. Phila., Wilmington & Baltimore R. R. Co., 181 Pa. 237; Drake v. Penna. R. R. Co., 137 Pa. 352; Sullivan v. Phila. & Reading R. R. Co., 30 Pa. 238; Sturgis v. Detroit, etc., R. R. Co., 72 Mich. 619.

Plaintiff was guilty of contributory negligence: Lees v. Phila. & Reading R. R. Co., 154 Pa. 46; Baker v. Penna. R. R. Co., 182 Pa. 336.

Mrs. Girton was a trespasser: Gillis v. Penna. R. R. Co., 59 Pa. 129; Baltimore & Ohio R. R. Co. v. Schwindling, 101 Pa. 261; Allerton v. Boston & Maine R. R. Co., 146 Mass. 241; Mulherrin v. Del., Lack. & Western R. R. Co., 81 Pa. 366; Phila., & Reading R. R. Co. v. Hummell, 44 Pa. 375; Redigan v. Boston & Maine R. R. Co., 155 Mass. 44; Drake v. Penna. R. R. Co., 137 Pa. 352; Johnson v. Boston & Maine R. R. Co., 125 Mass. 75.

*Paul J. Sherwood,* for appellees.—The case was for the jury: Betts v. Lehigh Valley R. R. Co., 191 Pa. 575; Flanagan v. Phila., Wilmington & Baltimore R. R. Co., 181 Pa. 237; Del., Lack. & Western R. R. Co. v. Jones, 128 Pa. 308; Chesapeake & Ohio Ry. Co. v. King, 49 L. R. A. 102; Gaynor v. Old Colony & Newport R. R. Co., 100 Mass. 208; Warren v. Fitchburg R. R. Co., 8 Allen, 227; Caswell v. Boston & Worcester R. R. Co., 98 Mass. 194; Mayo v. Boston & Maine R. R. Co., 104 Mass. 137; Parsons v New York Central & Hudson River R. R. Co., 113 N. Y. 355; Penna. R. R. Co. v. Aspell, 23 Pa. 147; Penna. R. R. Co. v. White, 88 Pa. 327; Ray on Passenger Carriers, sec. 46; Betts v. Lehigh Valley R. R. Co., 191 Pa. 579.

OPINION BY MR. JUSTICE BROWN, April 22, 1901:

The complaint of the appellant is that the jury were allowed to pass upon the question of its liability to the appellees. After all the facts had been presented, the court was asked to instruct them that they should find for the defendant; and the refusal to so instruct them is the alleged error which, by the two assignments, we are asked to correct. No error in the admission or rejection of evidence has been assigned; and we are not asked to disturb the judgment for any erroneous instructions in the general charge of the learned trial judge, who, throughout it, carefully, intelligently and correctly explained the conditions under which the defendant could be held liable by the plaintiffs. We are, therefore, simply to determine whether, under the admitted and proven facts, the case should have gone to the jury.

The unquestioned facts are, that on the afternoon of July 24, 1899, Maud R. Girton, one of the plaintiffs, with her son, about six years old, started from Wilkes-Barre for Ransom on a passenger train of the defendant company, and, a little after five o'clock reached the latter place. Between these points there are double tracks, and the plaintiff went over the north, or west-bound, one. The depot and platform at Ransom are along the south, or east-bound, track. When the train stopped on the west-bound track, the plaintiff and her son were helped by the brakeman to alight directly opposite the depot and platform, the two tracks being between her and them. Along and outside the west-bound track was a cinder fill or walk leading to a

public road about one hundred feet from the point at which the plaintiff alighted from the train. This road crossed the tracks and led to the Susquehanna river, on the opposite side of which she and her husband lived. Mrs. Girton expected him to meet her at the depot, and, to reach it, she was bound to cross the tracks, going either directly across, or up to the road, crossing there and then going down along the east-bound track until she reached the depot. All the space from the platform in front of the depot across to the point where she and her child were standing after they had alighted from the train was filled and leveled up by the railroad company, and, while walking across it, an express train, coming along the east-bound track at a very high rate of speed, struck and killed the child, and, though perhaps not admitted, manifestly injured the mother.

The facts which the jury could have found from the testimony are, that the space between the platform in front of the depot across to the cinder walk, along the west-bound track, had been filled and leveled up by the railroad company, to enable its passengers to cross over to and from the depot; that this was not only the usual and customary way over which passengers came to and went from the depot, and from trains on the west-bound track, but it was the way provided by the company for that purpose and to enable passengers coming on the west-bound track to reach the ferry; that Mrs. Girton remained standing with her child by her side after she had alighted from the train, until it had pulled by her perhaps a car's length, when she looked up and down the track to see if there was any other train coming; that there was no train in sight, except the one from which she had alighted, and none to be heard; that she then started across and passed on until she reached the space between the two tracks, where she stopped and again looked up and down the tracks to see if there was any train, but there was none in sight; that she glanced around at her child and saw he was by her side; that she then started across the last track and had gotten across, and was stepping up, with one foot raised to the platform, when she was struck by the Black Diamond Express, which suddenly came around the curve, a few hundred feet away, after she had started across the last track, some minutes late, running at a very rapid and unusual rate of speed, and without blowing a whistle or ringing a bell.

The case was clearly for the jury, and, under the foregoing facts, all either admitted or sustained by sufficient proofs, it could not have been withdrawn from them. Reference need only be made to Del., Lack. & Western R. R. Co. v. Jones, 128 Pa. 308, Flanagan v. Phila., Wilmington & Baltimore Railroad Co., 181 Pa. 237, and Betts v. Lehigh Valley Railroad Co., 191 Pa. 575. In submitting the case, the instructions of the learned trial judge to the jury were as follows : "We leave it to you to say whether the company had provided such a place and whether it was the usual place to cross from the cinder path over to the depot for persons who had a right and whose privilege it was to go to the depot, or for persons who were deposited there and were expecting to go on the other side of the track to go across to the ferry, for instance, or to some house on the river side of the track. If it had invited her there then she would not be a trespasser. If it was not the usual way for that kind of persons to go—persons who had come up on the train, or for persons taking the trains, or for persons who had been deposited upon the cinder path, by the company—to the other side of the tracks, if it was not the usual way provided by the company, then she would be a trespasser, and the company would not be responsible for any injury that it did to her, except for a wanton and malicious injury ; and there is no evidence in this case that the injury this plaintiff received was wantonly or maliciously inflicted. So that she could not recover if this was not a place that was provided by the company and held by it out for people of that kind to pass over to the depot, or to the ferry, or wherever they might desire to go upon that side of the track, after being passengers upon the train. . . . If she stopped, looked and listened, as I said before, and saw the train and attempted to pass over the tracks in front of it, if the train was in sight and she either saw it or by the use of ordinary care and attention could have seen it, it was her duty not to attempt to cross in front of it. If, on the other hand, she came to that crossing and stopped, looked and listened, and the train was not in sight, so that she could not have seen it and did not see it, and the place she attempted to cross was the one provided by the company for passengers ordinarily to cross in going to the ferry, and she was injured then in attempting to cross, and the company was negligent in not giving the signals or in the running of its train, then she and her husband would be en-

titled to recover for the actual damage they suffered by reason of the injury inflicted by this defendant company." The appellant cannot complain of these instructions, and the refusal of the first point submitted by it was properly consistent with them.

The assignments of error are overruled and the judgment is affirmed.

POTTER, J., dissents.