LUCINDA E. WILEY v. RUTLAND RAILROAD COMPANY.

Special Term, Rutland, 1912.

Present:   MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 8, 1913.

*Evidence—Judicial Admissions—Negligence—Carriers of Passengers—Care Required—Approaches to Station—Injury to Passenger in Leaving Station—Implied Invitation to Passengers to Use Path—Contributory Negligence—Reliance on Care of Carrier—"Due Care"—"Reasonable Care"—"Ordinary Care"—Erroneous Charge—Cured by Supplemental Charge—Requested Instructions—Applicability to Issues and Evidence.*

A "judicial admission" is a formal act done in court by a party or his attorney for the purpose of dispensing with proof by the opposing party of some fact claimed by the latter to be true, and is conclusive, unless relieved against in the discretion of the court; but a statement by a party against his interest, constituting a part of his testimony in the course of the trial, is not a judicial admission having conclusive effect.

It is the duty of a person about to cross a railroad track to look and listen for an approaching train, and to stop to listen, if that is necessary to make his listening effective, and to be specially attentive if either his vision is obstructed or his hearing impaired, and that duty continues as long as the discovery of a train will enable him to avoid injury.

Where a carrier impliedly invited its passengers to go to and from its station in a certain course, it was bound to do what was reasonably necessary to insure the safety of passengers so using that course.

A passenger leaving a railroad station by a path across a track, which path the carrier had impliedly invited passengers to use in going to and from that station, had a right to assume that she would not be endangered, while crossing the track, by the backing of a freight train that she saw halted thereon, and so was not, as matter of law, guilty of contributory negligence in not again look-

ing at the train, though she was bound to exercise due care in the circumstances.

In an action by a passenger for personal injuries from having been struck by a freight train while she was crossing a track in leaving the passenger station, evidence considered, and *held* that the question whether she exercised due care was for the jury.

The expressions "due care," "reasonable care," and "ordinary care" are convertible terms, and denote that degree of care that a careful and prudent man would exercise in the same circumstances.

A carrier of passengers is required to exercise for their safety the highest degree of care in respect of its roadbed, machinery, and appliances, and in the running of the trains, but a less degree of care for that safety is allowed in respect of the approaches to its cars and passenger stations, for in that regard there is required the exercise of only ordinary care and prudence, in view of the dangers to be apprehended.

In an action by a passenger for personal injuries from having been struck by a freight train while she was crossing a track in leaving the passenger station, an erroneous instruction as to the care required of the carrier in respect of the approaches to its station was not cured by a supplemental charge confined to the duty of the conductor of the freight train after he discovered plaintiff on the track in a place of danger and the train moving toward her.

The evidence being conflicting as to the distance of the freight train from plaintiff when she attempted to cross the track, as to the speed at which it was approaching her, and whether any warning was given, the court properly refused defendant's requested instructions that, if defendant gave a warning which would have allowed a person heeding it to have avoided the accident, and plaintiff either did not hear or did not heed it, she could not recover, and that if the conductor was standing on the rear end of the backing train, and warned plaintiff, he could assume that she would hear and heed the warning, and was not bound to resort to other means before attempting to avoid the accident by warning.

CASE for negligence. Plea, the general issue. Trial by jury at the June Term, 1912, Windsor County, *Butler,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*E. W. Lawrence* and *T. W. Moloney* for the defendant.

Plaintiff was guilty of contributory negligence on her own testimony as to her conduct, which amounted to a judicial admission and is conclusive. *Smith* v. *Boston Elevated Ry. Co.*, C. C. A. First Circuit, 184 Fed. 387.; *Feary* v. *Metropolitan St. Ry. Co.*, 162 Mo. 75; *Payne* v. *Chicago & A. R. Co.* (Mo.), 30 S. W. Rep. 148.

*William W. Stickney, John G. Sargent* and *Homer L. Skeels* for the plaintiff.

WATSON, J.    The plaintiff's evidence tended to show that she, a passenger on the defendant's westward train arriving in Ludlow about eight thirty o'clock in the morning, alighted from the train and walked westerly along the station platform to the west end thereof, and then in the same direction along the south side of the track to a point opposite a flight of stone steps, situated on the northerly side of the track leading down the bank to the public street. by which the railroad was there paralleled; that these stone steps are on the land of the railroad company, and with a path across the track and along the south side thereof constitute the usual and customary approach to the station platform for passengers on foot coming from and going to the highways in the village of Ludlow, and have been so used for more than forty years; that the plaintiff was travelling in this path toward the stone steps when injured; that when she arrived at the point in said path on the south side of the track almost opposite the stone steps, she halted, looked up and down the tracks; that she saw the train from which she had just alighted standing beside the platform, and saw standing still on the track a freight train the rear end of which was, as stated by one witness, about twenty feet westerly of the path across the track to the stone steps, but according to plaintiff's testimony it was much farther away; that seeing the two trains as stated, and "thinking the coast was clear," she "made a quick pass to go across" the track in the path toward the steps, and as she stepped upon the track the freight train was suddenly started backward, without warning of any kind that it was about to be moved, the rear car striking her, knocked her

down, ran over and cut off her right arm; that some of the passengers who arrived at the station on the same train with her, crossed the track before her, and some were coming toward the place of crossing behind her; that when injured she was sixty-six years of age, had been troubled a little more or less with deafness for forty years, but at times could hear as well as anyone, and when travelling on cars could hear conversation plainly from one end of the car to the other, and could have heard a whistle blow at the time of the accident had one been blown; that she had more difficulty in hearing in the left ear than in the right, and sometimes used a trumpet; that she had been to Ludlow by train many times in the last fifty years, followed the same course (path) at the station as on the day of the accident, and she testified without objection that on that day she was "exceedingly" careful.

The defendant's evidence tended to show that the freight train was not standing still during the time the passengers were leaving the other train and the platform, but was backing at a speed of about six miles an hour toward the station on the same track there occupied by the passenger train, from a point several hundred feet westerly thereof, the conductor being on the back platform of the rear car to give warning; that the plaintiff was walking beside the track towards the stone steps, and when the train was a short distance from her, she, without looking, started to cross the track, whereupon the conductor shouted to her, but, as she did not heed the warning, he then endeavored to get down the steps and push her off the track, and seeing he could not do so, he jumped off the train and signalled the engineer to stop; that the engineer could not then stop the train in season to avoid hitting her.

The defendant moved for a verdict on the grounds, among others, that upon the evidence the accident occurred through the contributory negligence of the plaintiff; and that upon all the evidence there was no issue for the jury. Was the overruling of this motion error? is one of the questions before us.

It is said that the plaintiff, as a witness, testified that the only time she looked up the track and saw the freight train was when she was some distance easterly of the point opposite the stone steps—within a few steps of the platform—and consequently. notwithstanding other evidence introduced by her

tended to show her looking at that train when she was almost opposite the stone steps, her own testimony in this respect, being as to a matter within her own knowledge, was in the nature of a judicial admission and therefore, as against her in this case, of conclusive effect.   But this is overlooking the distinctive characteristics of judicial admissions made by a party, or his attorney, in court, on the trial of a cause.   Such admissions are formal acts done for the purpose of dispensing with the production of evidence by the opposing party of some fact claimed by the latter to be true, and are of conclusive effect, unless relieved against in the discretion of the court.   *United States for Use of Lyman Coal Co.* v. *United States Fid. & Guar. Co.,* 83 Vt. 278, 75 Atl. 280; Wigmore on Ev., Sec. 1057, 2590.   The statement here claimed by the defendant to be conclusive against the plaintiff, constituted a part of her testimony as a witness on the trial of the cause.   Considered as a statement against her interest, it was not an admission, distinct and formal in character, nor was it made for the purpose of dispensing with the formal proof of any fact at the trial.   · It was not therefore in the nature of a judicial admission, having conclusive effect in law.   It has been held by this Court that admissions made by a party in giving testimony as a witness on the trial of a cause, are not controlling against him, as a matter of law, when shown by the opposing party on a subsequent trial of the same cause. *LaFlam* v. *Missisquoi Pulp Co.,* 74 Vt. 125, 52 Atl. 526.   Neither are they, being informal, conclusive in law on the trial at which the party gives the testimony.   *Matthews* v. *Story,* 54 Ind. 417; *Shepard* v. *St. Louis Transit Co.,* 189 Mo. 362, 87 S. W. 1007; *Zander* v. *Transit Co.,* 206 Mo. 445, 103 S. W. 1006; Wigmore on Ev., Sec. 2594; Chamberlayne on Ev., Sec. 1263, 1264.

It is argued that with the plaintiff's knowledge of the conditions at Ludlow station, she was aware that the freight train must back up to let the other train pass, as there was no siding west of the station, affording a means of such passing, and that, having an impairment of hearing, to go upon the railroad track without taking further notice of the freight train should be held as a matter of law to be contributory negligence, preventing recovery.   This position is taken, relying upon the well established rule in this State requiring a person about to cross a railroad track to look and listen for an approaching train and

to stop to listen if necessary to make his listening effective, and to be specially vigilant respecting listening if his vision is obstructed, and respecting his vision in case of impaired hearing, —continuing as long as the discovery of a train will enable him to avoid injury. Yet this rule in all its strictness is not applicable to the case before us. Here the plaintiff, as a passenger on one of the defendant's trains, had just alighted at the station of her destination, and was leaving the station to go to the public highway on the opposite side of the railroad, by crossing the defendant's tracks and its premises in the path and by the stairs, accustomed to be used by passengers walking to or from defendant's station, for more than forty years. Indeed, the evidence showed an implied invitation by the railroad company to such passengers, to go to and from the station over this course. There can therefore be no doubt, that under the laws of this State, the defendant was in duty bound to do what was reasonably necessary to ensure the safety of passengers, thus going to or leaving this station. *Beard* v. *Conn. & Pass. Rivers R. Co.,* 48 Vt. 101; *Hale* v. *Grand Trunk Railroad,* 60 Vt. 605, 15 Atl. 300, 1 L. R. A. 187. When the plaintiff, after alighting from the passenger train and when walking on the south side of the tracks toward the usual place of crossing them, saw the freight train standing still on the track some distance westerly, all within the tendency of her evidence, she had a right to assume that her safety in crossing the tracks would not be endangered by the backing of that train while she was so doing, and she was not as a matter of law guilty of contributory negligence in not again looking at it, or in not keeping a constant lookout. While the plaintiff was bound to exercise due care according to the circumstances, her watchfulness would naturally be diminished by her right of reliance upon the company's discharge of its duty to passengers to exercise reasonable diligence in providing them a safe passage to and from its trains. Whether in the circumstances of this case she exercised due care was a question for the jury, and in overruling the motion for a verdict there was no error. *Brassell* v. *N. Y. C. & H. R. R. R. Co.,* 84 N. Y. 241; *Terry* v. *Jewitt,* 78 N. Y. 338; *Besecker* v. *Delaware, Lackawanna and Western R. Co.,* 220 Pa. 507, 14 Ann. Cas. 21, 69 Atl. 1039, 123 Am. St. Rep. 714; *Weisenberg* v. *Lackawanna & Wyoming Valley R. Co.,* 237

Pa. 33, 85 Atl. 74; *Atlantic City R. Co.* v. *Goodwin*, 62 N. J. L. 394, 72 Am. St. Rep. 652, 42 Atl. 333, 45 L. R. A. 671; *Rodick* v. *Maine Cent. R. Co.*, 109 Me. 530, 85 Atl. 41; *Atchison, Topeka & Santa Fe Ry. Co.* v. *McElroy*, 76 Kan. 271, 91 Pac. 785, 13 L. R. A. (N. S.) 620, 123 Am. St. Rep. 134; *Tubbs* v. *Michigan Cent. R. Co.*, 107 Mich. 108, 64 N. W. 1061, 61 Am. St. Rep. 320; *Warner* v. *Baltimore & Ohio R. Co.*, 168 U. S. 339, 18 Sup. Ct. 68, 42 L. ed. 491.

On the degree of care to be exercised by the defendant after the plaintiff alighted from the train, the court charged the jury that the carrier of passengers is bound to use the utmost care and caution which may be reasonably expected of a careful and prudent man in like circumstances—that in short the plaintiff was a passenger not only while leaving the car, but also while rightfully leaving the company's station, and the platform, path, or way, provided by it for passing from the station to the highway over its own property; and if the company has provided a way of passage for exit from its station over its tracks, and invites its passengers either expressly or impliedly to use such way in leaving its station to reach the street, it owes the same duty as it owes to a passenger or passengers who are passing along the platform. In other words, this charge required the defendant to exercise the same degree of care toward the plaintiff after she alighted from the train and was leaving the station, going across the defendant's premises to the public highway, as when she was a passenger upon its train. To this an exception was saved. The charge in this respect seems to be in accordance with the rule which obtains in some jurisdictions, that the duty of the carrier to a passenger is to exercise the highest degree of care at all times while that relation exists—from the time a person becomes a passenger until he ceases to be such by the completion of his journey, and he has left the carrier's premises (See *Fremont, etc. R. Co.* v. *Hagblad*, 72 Neb. 773, 101 N. W. 1033, 106 N. W. 1041, 4 L. R. A. (N. S.) 254, 9 Ann. Cas. 1096; *Brackett* v. *Southern Ry.*, 88 S. Car. 447, 70 S. E. 1026, Ann. Cas. 1912 C. 1212); but such is not the law of this State. In *Beard* v. *Conn. & Pass. Rivers R. Co.*, cited above, the plaintiff was injured in going down a certain open stairway in defendant's depot where she had gone in the evening to take a train which she had been informed

would leave there between nine and ten o'clock. The court said there was no question as to the duty of the railroad company to do what was reasonably necessary on the depot premises, to ensure safety to the person of the plaintiff in doing what she did, she being in the exercise of proper care. It is manifest from the holding touching the charge, that the duty of the carrier to do what was "reasonably necessary" as there stated, meant that it was bound to exercise ordinary care and prudence, for the court told the jury that "in order to entitle the plaintiff to recover, she must establish that the defendant was guilty of negligence, or was wanting in the exercise of ordinary care and prudence to persons rightfully on the upper platform," etc. This was held to be without fault. In *Hale* v. *Grand Trunk R. R.*, 60 Vt. 605, 15 Atl. 300, 1 L. R. A. 187, it was held that by accepting the carriage of the mail for the United States government the defendant became under the duty to furnish the plaintiff a "reasonably safe passage" to its mail train while stopping at the station named for the purpose of mailing his letters, he being there at the invitation of the defendant to transact business which it had been hired to perform for and with him, by the government. This case involved the same legal question as did the Beard case, and the holding was in law the same. The expressions "due care," "reasonable care," and "ordinary care" are convertible terms. *Baltimore, etc. R. Co.* v. *Faith*, 175 Ill. 58, 51 N. E. 807; *Raymond* v. *Portland R. Co.*, 100 Me. 529, 62 Atl. 602, 3 L. R. A. (N. S.) 94; *Nesbit* v. *Crosby*, 74 Conn. 554, 51 Atl. 550; *Milwaukee & St. Paul Ry. Co.* v. *Arms*, 91 U. S. 489, 23 L. ed. 374. In *Geno* v. *Fall Mountain Paper Co.*, 68 Vt. 568, 577, 35 Atl. 475, the terms "reasonably safe" and "ordinary care" were used as of the same purport, thus: the court said the real question was whether in the circumstances of the case, "this projecting head was reasonably safe"; and in a later paragraph on the same page it is said, "the question for the jury being whether the defendant was in the exercise of ordinary care, . . . . Whether the appliance was reasonably safe or not might depend," etc. As expressive of the same degree of care the words "ordinary and reasonable care" are sometimes used (*Hiatt* v. *Des Moines, etc. Ry. Co.*, 96 Ia. 169, 64 N. W. 766), also "reasonable or ordinary care." *Louisville & N. R. Co.* v. *Reynolds*, (Ky.) 71 S. W. 516. And in *Fassett*

v. *Roxbury,* 55 Vt. 552, it was held "that the words, 'ordinary care and prudence,' and the like, *when rightly interpreted,* convey the true idea and doctrine of the law on this subject, and import that degree of care and prudence that careful and prudent men would exercise in the same circumstances." To the same effect is *Reynolds* v. *City of Burlington,* 52 Vt. 300.

From the carrier of passengers the law requires the highest degree of care respecting the roadbed, the machinery, the cars, the appliances, and the running of trains, because negligence in such respects is likely to result in great bodily harm, and in many instances loss of life, to those using that means of conveyance. But as to approaches to the cars, such as the platform, the halls, stairways or the like, and as to paths across the station grounds accustomed to be used by passengers under the company's implied invitation, in passing between the station and the public highway, as in this case, a less degree of care is allowed, because the consequences of negligence in respect thereof are naturally much less serious in nature, the degree of care being measured by what may reasonably be expected, considering the consequences which may follow, rather than solely by the relation of carrier and passenger. *Briggs* v. *Taylor,* 28 Vt. 180, 187; *Moreland* v. *Boston & Providence R. R.,* 141 Mass. 31, 6 N. E. 225. In this Massachusetts case, after stating how the degree of care is to be measured, the court said that a railroad company would not act reasonably if it did not exercise greater care in equipping and running its trains than in respect to the condition of its station grounds. This Court said in *Fassett* v. *Roxbury,* 55 Vt. 552, that "care and prudence always vary according to the exigencies that require vigilance and attention, conforming in amount and degree to the particular circumstances in which they are to be exercised." And in *Parker* v. *Boston & Maine Railroad,* 84 Vt. 329, 79 Atl. 865, that the rule does not mean "that the same degree of care is required in all cases, but means, when rightly understood, that the degree of care required in the particular case must be such as is commensurate with the circumstances that call for its exercise."

We think upon principle and by the great weight of authority, the carrier does what is reasonably necessary to ensure the safety of those who as passengers have alighted from the train at the station of their destination and are leaving the sta-

tion premises, when it exercises ordinary care and prudence in view of the dangers to be apprehended. Among the many cases from other jurisdictions supporting this rule, are the following: *Lafflin* v. *B. & S. W. R. R. Co.*, 106 N. Y. 136, 12 N. E. 599, 60 Am. Rep. 433; *Kelly* v. *Manhattan R. Co.*, 112 N. Y. 443, 20 N. E. 383, 3 L. R. A. 74; *Moreland* v. *Boston & Providence R. R.*, 141 Mass. 31, 6 N. E. 225; *Maxfield* v. *Maine Cent. R. Co.*, 100 Me. 79, 60 Atl. 710; *Woodbury* v. *Maine Cent. R. Co.*, (Me.) 85 Atl. 753; *Bacon* v. *Casco Bay Steamboat Co.*, 90 Me. 46, 37 Atl. 328; *Dotson* v. *Erie R. Co.*, 68 N. J. L. 679, 54 Atl. 827; *Pennsylvania R. Co.* v. *Marion*, 104 Ind. 239, 3 N. E. 874, 7 L. R. A. 687, 27 Am. & Eng. R. Cas. 132; *Falls* v. *San Francisco, etc. R. Co.*, 97 Cal. 114; 31 Pac. 901; *Southern R. Co.* v. *Reeves*, 116 Ga. 743, 42 S. E. 1015; *Georgia, etc. Ry. Co.* v. *Brown*, 120 Ga. 380, 47 S. E. 942; *Bennett* v. *Louisville and N. R. Co.*, 102 U. S. 577, 26 L. ed. 235; *Warner* v. *Baltimore & Ohio R. Co.*, 168 U. S. 339, 18 Sup. Ct. 68, 42 L. ed. 491; *St. Louis, Iron Mountain & S. Ry. Co.* v. *Barnett*, 65 Ark. 255, 45 S. W. 550; *Hiatt* v. *Des Moines, etc. Ry. Co.*, 96 Iowa, 169, 64 N. W. 766; *Louisville and N. R. Co.* v. *Reynolds*, (Ky.) 71 S. W. 516; *McCormick* v. *Detroit, G. R. & M. Ry. Co.*, 141 Mich. 17, 104 N. W. 390; *Robertson* v. *Wabash Ry. Co.*, 152 Mo. 382, 53 S. W. 1082; *Crowe* v. *Michigan Cent. R. Co.*, 142 Mich. 692, 106 N. W. 395; *Batton* v. *South, etc. R. Co.*, 77 Ala. 591, 54 Am. Rep. 80. The same rule is laid down by the leading text writers: 3 Thomp. Neg. sec. 2691, 2748; 4 Elliott on Railroads, sec. 1590; 2 Hutch. Carr. sec. 941.

It is said, however, that even though the charge was erroneous in the respect named, the error was cured by the supplemental charge, to which no exception was saved. But this can hardly be so, for the supplemental charge was in amendment of another part of the charge, and is confined to the duty of the conductor after he discovered the plaintiff on the track in a place of danger and the train moving toward her, if it was, "in the emergency—if there was an emergency." In connection therewith the court gave further instructions regarding the duty of the plaintiff in such emergency. Nothing further.

Concerning the defendant's seventh request that, "If the defendant gave a warning at the time of the accident which would have allowed a person hearing and heeding it to have

33

avoided the accident, and you find the plaintiff either did not hear or heed the warning, your verdict must be for the defendant,'' and its eighth request that, ''If the jury find that the conductor was standing on the rear end of the train, as he states, and shouted a warning, he had a right to presume that the plaintiff would hear and heed it, and was not bound to resort to other means before attempting to avoid the accident by warning,'' it is enough to say that the evidence as to the distance the freight train was westerly of the place where the plaintiff attempted to cross the track, and as to the speed of that train in backing up, and as to the fact of any warning at all being given, and if given the distance from the plaintiff when given so varies, or is so contradictory, that neither of these requests can be said to be sound as a matter of law, in this case.

The other questions presented are not likely to arise on another trial.

*Judgment reversed and cause remanded.*